SANTANA ET AL., DEMANDANTES Y APELADOS, *v.* EL MUNICIPIO DE MANATÍ, ETC., DEMANDADOS Y APELANTES.

No. 3027.—*Visto:* Enero 31, 1924. *Resuelto:* Abril 24, 1924.

OBRAS PÚBLICAS MUNICIPALES—SUBASTA NULA.—Generalmente existen cartas constitutivas o preceptos estatutorios que exigen que las proposiciones para licitaciones de ciertos contratos municipales deben ser publicadas y el contrato adjudicarse al postor que hace la más baja y mejor proposición, o al que hace la más baja proposición y ofrece la mejor garantía. Tales requisitos se exigen con el fin de invitar a la competencia y evitar el favoritismo y fraude y garantizar el mejor trabajo o materiales al precio más bajo posible, y dichos requisitos se ponen en vigor para beneficio de los propietarios y contribuyentes, y no para favorecer o enriquecer a los licitadores, y deben cumplirse teniendo sólo presente el interés público. Estas disposiciones se interpretan estrictamente por las cortes y no se les dará un alcance fuera de su objeto razonable. Cuando una disposición válida contenida en un estatuto, carta constitutiva u ordenanza, exige licitaciones en competencia, el precepto es mandatorio y debe cumplirse enteramente con él, o de otro modo el contrato será nulo y no podrá ponerse en vigor contra el municipio.

ID.—ID.—En el presente caso una ordenanza municipal autorizaba al comisionado de servicio público, policía y prisiones para hacer un empréstito al objeto de construir un alcantarillado, debiendo emitirse como prueba de la deuda pagarés del municipio. Sin haber hecho el empréstito, el susodicho comisionado publicó un edicto llamando licitadores para la construcción de las obras, imponiéndoles la condición de que el licitador que obtuviera la buena pro estaría obligado a comprar el empréstito si así lo acordaba la junta de subastas y bajo tales condiciones la subasta fué adjudicada. *Se resolvió:* que la adjudicación es nula por haber sido hecha en violación de la ordenanza autorizando el empréstito.

SENTENCIA de *E. Lloreda,* J. (Arecibo), declarando en parte con lugar la demanda, sin costas. *Confirmada.*

*J. B. Soto* y *J. R. Aponte,* abogados de los apelantes; *Sr. R. Rivera Zayas,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Una ordenanza municipal titulada "Ordenanza autorizando la contratación de un empréstito por la suma de $45,000 para la construcción de un sistema de alcantarillado por el municipio de Manatí, Puerto Rico, y para otros fines," autorizaba y ordenaba al Comisionado del Servicio Público, Policía y Prisiones, a tomar a préstamos a cualquier banco, institución bancaria o individuo la cantidad arriba indicada a un tipo de interés que no había de exceder del 7 por ciento anual, y para que hiciera librar como prueba de tal deuda, pagarés del municipio en la forma prescrita.

Del importe total la suma de $2,000 había de emplearse en estudios preliminares, impresión de certificados y adquisición de terrenos, y $43,000 en la verdadera obra de construcción. También se proveyó sobre reembolso al gobierno insular de los mismos fondos para cualesquiera gastos en que se hubiera incurrido debido a la intervención del Departamento del Interior en dichas obras, y para disponer de cualquier saldo que quedara después de la terminación de la obra.

Que el edicto sobre proposiciones especifica como "condición impuesta por el Concejo de Administración para la aceptación de proposiciones, que el licitador afortunado deberá estar dispuesto a comprar el empréstito de $45,000 . . . . . si esto le fuese exigido por la Junta de Subastas."

Debido a esta singular condición previa y a su clara tendencia a desalentar y eliminar la competencia y por algunas otras razones que no necesitamos discutir, a solicitud de ciertos contribuyentes la Corte de Distrito resolvió que la adjudicación del contrato para la construcción de un sistema de alcantarillado en la forma indicada, no estaba autorizada y era nula, prohibiendo todos los demás procedimientos por virtud de la adjudicación como fué hecha.

Hay poca o ninguna controversia en cuanto al precepto legal envuelto.

"Generalmente existen cartas constitutivas o preceptos estatutorios que exigen que las proposiciones para licitaciones de ciertos contratos municipales deban ser publicadas y el contrato adjudicarse al postor que hace la más baja y mejor proposición, o al que hace la más baja proposición y ofrece la mejor garantía. Tales requisitos se exigen con el fin de invitar a la competencia y evitar el favoritismo y fraude y garantizar el mejor trabajo o materiales al precio más bajo posible, y dichos requisitos se ponen en vigor para beneficio de los propietarios y contribuyentes, y no para favorecer o enriquecer a los licitadores, y deben cumplirse teniendo sólo presente el interés público. Estas disposiciones se interpretan estrictamente por las cortes y no se les dará un alcance fuera de su objeto razonable.

"Cuando una disposición válida contenida en un estatuto, carta constitutiva u ordenanza, exige licitaciones en competencia, el precepto es mandatorio y debe cumplirse enteramente con él, o de otro modo el contrato será nulo y no podrá ponerse en vigor contra el municipio." 3 McQuillan, 2630.

Pero los apelantes sostienen que la condición impuesta a los licitadores que pudieran presentarse, en el presente caso no vició de nulidad la subasta:

"1. Porque tal condición no tiende, según pretenden los demandantes, a impedir la libre competencia, puesto que sólo se dice en el anuncio que los licitadores deberán estar dispuestos a comprar si se lo exigiere la Junta de Subasta, los pagarés; sin que se les imponga la obligación de comprarlos por un precio dado, que pueda no convenirles.

"2. Porque, aunque tendiera a impedir la competencia, tal condición, por otra parte, vendría a beneficiar al Municipio, y consiguientemente, a los contribuyentes de Manatí, asegurando compradores para los sobredichos pagarés y, como es natural, brindando oportunidad al Municipio para venderlos a más alto precio.

"3. Porque los referidos pagarés se emitían para levantar fondos con que construir el susodicho alcantarillado, y era perfectamente legal para el Municipio, al invitar licitadores por medio del anuncio correspondiente, advertirles que el pago se les haría en pagarés a la orden de la clase de los descritos en la ordenanza. En eso no hay nada ilegal ni impropio o improcedente; y a eso equivale la condición establecida en el anuncio de subasta, y que los demandantes atacan como ilegal.

"4. Porque además nuestra Ley Municipal, que es la primera a que debemos atender al resolver las cuestiones levantadas, difiere de la mayor parte de las leyes americanas en un punto capital: en que nuestra ley *sólo* impone la obligación de que toda obra pública se verifique *mediante subasta,* sin exigir, como en las leyes de los Estados Unidos a que se refiere la jurisprudencia citada, que las obras se adjudiquen al *postor más bajo.*

"5. Porque, en conclusión, el contrato se hizo no sólo con un postor competente, como lo es el señor Antonsanti, sino también a un precio relativamente bajo, ya que, su costo los ingenieros del Municipio lo calcularon en no menos de cuarenta y tres mil (43,000) dólares, y el señor Antonsanti se comprometió, según se alega en la misma demanda, a realizarlos (los trabajos) por treinta y siete mil quinientos sesenta y seis dólares con setenta centavos ($37,566.70), con marcado beneficio para el Municipio y, consiguientemente, para los demandantes, como contribuyentes de dicho Municipio."·

Sugieren también los apelantes que la corte inferior incurrió en error al conceder un *injunction* preliminar sin exigir una fianza. En relación con esto se cita el artículo 7 de nuestro estatuto local y el caso de *Neumann* v. *Moretti,* 146 Cal. 31.

Admiten los apelantes que a virtud de la petición del contratista demandado, Antonsanti, se ordenó el otorgamiento de una fianza a su favor, pero se quejan de la alegada negativa de la corte a exigir una fianza semejante en favor de los otros demandados. No se hace referencia a ninguna página o parte de los autos donde aparezca la orden en cuestión, o sus fundamentos, si algunos se expusieron. El caso de California arriba citado parece que fué una apelación interpuesta contra una resolución negándose a dejar sin efecto un mandamiento de *injunction* preliminar, *ex parte,* caso que fué resuelto mucho después que había sido dictada la sentencia en la corte inferior contra los demandantes; y en favor de los demandados que de tal modo habían sido restringidos, cuya sentencia, en tanto puede tener alguna relación con la orden preliminar de *injunction,* fué confirmada al mismo tiempo en que se revocó la resolución dictada sobre la moción para anular tal orden preliminar.

En el presente caso, y asumiendo por el momento que no exista otro error que requiera la revocación, no hay nada que indique por qué la cuestión referente a la omisión en exigir una fianza, no debe considerarse como académica en el actual estado del procedimiento; de cómo fueron perjudicados los apelantes por el error, si lo hubo, o por qué la sentencia apelada debe ser revocada por tal fundamento aún cuando técnicamente dicho fundamento esté bien presentado.

Ni tampoco podemos convenir con la teoría de que el no consignarse un precio de venta tienda a hacer algo más llamativa la proposición para licitaciones a los postores que puedan presentarse. Si una compra a precio nominal no se infería claramente, la condición ciertamente no permite que el precio se fije, ya por el que obtiene la buena pro, o por subsiguiente convenio celebrado entre él y las autoridades municipales, sujeto al privilegio de poder ser retirado por el licitador, caso de no llegarse a un entendimiento satisfactorio en este sentido. Y una venta por menos del precio nominal implicaría una violación de la limitación expresa relativa a un tipo máximo de interés, a menos que también se infiera una rebaja correspondiente en tal tipo. Además, de todos modos una estipulación por inferencia o en otra forma en cuanto a tales contingencias subsiguientes tendería más bien a fijar que a hacer desaparecer lo que pueda ser materia de objeción en la condición. Por otra parte, un precio fijo más definido podría haber beneficiado la teoría de los apelantes, si toda la cuestión de renuncia o exigencia de un estricto cumplimiento con los términos de la condición onerosa impuesta no hubiera quedado entera y exclusivamente a voluntad de la Junta de Subastas, para ser fijada o anunciada después de hecha la adjudicación, o por lo menos después que las proposiciones habían sido sometidas.

No creemos necesario o conveniente el entrar en una discusión de los méritos del proyecto desarrollado por el con-

cejo municipal de administración en este caso, como un mé-
todo de proveer compradores para los pagarés del munici-
pio a un precio más alto que el que podrían estar dispues-
tos a pagar los capitalistas o banqueros. Una ordenanza
convirtiendo dichos pagarés en moneda legal dentro de los
límites territoriales del municipio hubiera sido un medio
simple, directo y, asumiendo que existe tal poder legisla-
tivo, igualmente eficaz hacia el mismo fin.

El edicto no informaba simplemente a los postores de que
la obra sería pagada con pagarés del municipio. Les reque-
ría que estuvieran preparados no sólo para proveer fondos
con el fin de llevar a cabo la obra, sino también para adelan-
tar al municipio una suma considerablemente mayor a la
cantidad que había de reintegrarse en compensación a la
obra. De modo que un postor que a no ser por esto hu-
biera estado dispuesto a hacer la obra, digamos por $35,000,
esto es, por $2,500 menos de la suma por la cual se otorgó
el contrato, hubiera sido requerido después de suministrar
los fondos necesarios para realizar la obra, y además de esto,
a adelantar al municipio no sólo el importe de su proposi-
ción, sino además la suma de $10,000 antes de empezar la
obra, a no ser que la Junta de Subasta en la fecha de la su-
basta, o después, creyera conveniente y resolviera relevarle
de esa obligación. Si se decidiera o no la junta a exonerarlo
de esta obligación, como lo hizo en el caso del postor que
obtuvo la buena pro, el demandado en este caso, al siguiente
día de la adjudicación, o si determinase hacerle cumplir su
contrato, es cuestión que podría depender de varias cosas,
entre éstas la mera preferencia personal para seguir uno u
otro camino. La posible ventaja de un licitador cuyas re-
laciones personales, sociales o de negocios con la junta, o los
miembros individuales de la misma, eran de naturaleza ín-
tima, cordial o amistosa, sobre uno que no resultaba ser fa-
vorecido de tal modo, no es necesario indicarla para que
pueda verse inmediatamente por cualquier persona, aun
cuando ésta no sea un contratista de experiencia.

Que nuestra Ley Municipal no requiere precisamente que el contrato se adjudique al ''postor que hace la más baja y mejor proposición, o al que hace la más baja proposición y ofrece la mejor garantía'' no elimina el elemento de libre competencia como un requisito previo indispensable. El espíritu y fin del precepto legal de que toda obra pública se realice ''mediante proposiciones'' es garantizar la mayor competencia posible entre los licitadores, y como resultado de esto la mayor ventaja y el mejor contrato que pueda obtenerse para el municipio, no para algún hijo favorito o protegido político, a costa de los contribuyentes y con exclusión de los contratistas que son igualmente competentes y responsables, que estarían dispuestos a hacer la misma obra bajo iguales condiciones y por menos dinero.

El hecho de que el postor que obtuvo la buena pro en el presente caso es un contratista competente cuya proposición estaba comprendida en el máximum de la cantidad disponible para la obra, puede ser una circunstancia atenuante, pero no puede subsanar la omisión en publicar proposiciones que permita a los licitadores competir en igualdad de condiciones, bajo términos definidos y condiciones aplicables a todos por igual y sin estar sujetos a que se pongan después en vigor o se renuncien al gusto o capricho de la Junta Municipal de Subasta.

*Debe confirmarse la sentencia apelada.*